UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LUIS ALEXANDER RAMOS LAMAR,

                              Plaintiff,

                -against-                             **REPORT AND**
                                                          **RECOMMENDATION**
A&O BROTHERS CORP. d/b/a ARIS                      21 CV 169 (RPK) (CLP)
POLLOS A LA BRASA *and* ADRIANO
MARTE,

                            Defendants.
----------------------------------------------------------X

**POLLAK**, Chief United States Magistrate Judge:

       On January 12, 2021, plaintiff Luis Alexander Ramos Lamar commenced this action against defendants A&O Brothers Corp., d/b/a Aris Pollos a La Brasa ("A&O"), and Adriano Marte ("Marte"), seeking damages for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours wages, and violations of wage notice and wage statement requirements, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL") § 650, et seq. (See Compl.[1]).

       Currently pending before this Court is plaintiff's motion for default judgment against defendant A&O.[2] For the reasons set forth below, the Court respectfully recommends that plaintiff's motion be granted, and a default judgment entered against A&O.

---

[1] Citations to "Compl." refer to the Complaint, filed January 12, 2021, ECF No. 1.
[2] On November 30, 2021, plaintiff filed a voluntary dismissal as to individual defendant Marte, and on December 1, 2021, the district judge directed the Clerk of Court to dismiss the case against Marte and update the caption accordingly. (See ECF Nos. 17, 18; Electronic Order, dated Dec. 1, 2021). A&O is therefore the sole remaining defendant in this action. Accordingly, this Court will only refer to defendant A&O and the allegations against it throughout.

**FACTUAL BACKGROUND**

Plaintiff resides in Kings County, New York and worked as a food delivery person for defendant from in or around June 2018 until on or around August 24, 2020. (Compl. ¶¶ 5, 12; Seelig Aff.[3] ¶ 8). Defendant A&O is a domestic limited liability company organized under New York state law, with its principal place of business at 691 Knickerbocker Avenue, Brooklyn, New York, 11221. (Compl. ¶ 6). Defendant operates "a restaurant under the trade name 'ARIS POLLOS A LA BRASA,'" which is located at defendant's principal place of business. (Id. ¶ 8).

According to the Complaint, plaintiff worked six days per week, with his regular shift running from 2 p.m. to 11 p.m. (Id. ¶ 13). However, plaintiff also alleges that, three times per week, he was required to work until 12 a.m. (Id.) He therefore was required to work 57 hours per week and regularly worked shifts exceeding 10 hours. (Id.) Plaintiff asserts that, from June 2018 until January 2020, he was paid a "fixed salary" of $400 per week for all hours worked, and, from January 2020 until August 24, 2020, he was paid $450 per week. (Id. ¶ 14). He states that, as a result of defendant's policy of paying a "fixed salary," he was not paid for all the hours that he worked, or, in other words, he was not compensated in accordance with the statutory minimum wage.[4] (Id. ¶¶ 14, 27). Additionally, plaintiff states that he never received overtime compensation for hours worked over 40 in a week nor did he receive spread-of-hours compensation for shifts in excess of 10 hours.[5] (Id.) Additionally, plaintiff states that defendant

---

[3] Citations to "Seelig Aff." refer to the Affirmation of plaintiff's attorney, Anne Seelig, Esq., in support of plaintiff's motion for default judgment, filed June 30, 2021, ECF No. 15.

[4] Plaintiff interchangeably alleges that he was not paid for hours worked or was not paid the statutory minimum wage. (See Compl. ¶¶ 14, 18, 27, 37). Since plaintiff appears to have included the additional hours that he claims to have worked without pay in his total number of hours worked, this Court has referred to this aspect of plaintiff's claim as one for unpaid minimum wages, rather than a failure to pay for hours worked.

[5] The Court notes that plaintiff makes a vague reference in his Complaint to "non-tipped work," but does not include any information as to tips that he received, whether defendant deducted tips from his weekly pay, or whether he received the requisite tip notice. (See Compl. ¶¶ 15, 27). More importantly,

did not "maintain proper employment records" or provide wage statements or a wage notice. (Id. ¶¶ 16, 20-21).

Plaintiff asserts causes of action under (1) the FLSA for failure to pay plaintiff the statutory minimum wage and overtime compensation, and (2) the NYLL for failure to pay plaintiff the statutory minimum wage and overtime compensation, failure to pay plaintiff the spread-of-hours premium, and failure to provide plaintiff with proper wage notices and statements. (See id. at 6-7 (setting forth Counts I and II)).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint on January 12, 2021, the Summons and Complaint were served on A&O through service on the Secretary of State. (Seelig Aff. ¶ 4; see ECF No. 8). When defendant failed to file an answer or otherwise respond within the required time period, the Clerk of Court entered a Certificate of Default against A&O on June 14, 2021. (See ECF No. 13). On June 30, 2021, plaintiff filed a motion for default judgment (see ECF No. 14), accompanied by the Seelig Affirmation, plaintiff's damages calculations, and a Memorandum of

---

there is no further mention of non-tipped work in plaintiff's motion for default judgment. Although an employer may take a "tip credit" under the FLSA, which allows the employer to pay less than the minimum wage in actual wages because the employee will earn sufficient tips to cover that amount, the employer bears the burden of showing it complied with the tip credit provision. Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240, 254 (S.D.N.Y. 2021). First, the employer must show that the employee was informed of the tip credit provision, and, second, the employer must permit the employee to retain all of the tips the employee receives. See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497-98 (S.D.N.Y. 2015) (quoting Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014)). The NYLL similarly provides for a tip credit, see 12 N.Y.C.R.R. § 146-1.3, and also places the burden on the employer to show compliance with a written notice requirement. See Mendez v. MCSS Rest. Corp., No. 16 CV 2746, 2021 WL 4480569, at *10 (E.D.N.Y. Sept. 30, 2021). Here, as a result of defendant's default, the Court has no information to evaluate any tip credit claim, and since plaintiff does not seek reimbursement for withheld tips, tips have not been considered in this Report and Recommendation.

Law in support of the motion. (See Seelig Aff.; Dam. Calc.;[6] Mem.[7]). Defendant failed to file anything in response.

## DISCUSSION

I. <u>Default and Default Judgment Standard</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See <u>id.</u>; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendant on June 14, 2021. (See ECF No. 13).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default

---

[6] Citations to "Dam. Calc." refer to plaintiff's damages calculation, filed June 30, 2021, ECF No. 15-4.

[7] Citations to "Mem." refer to plaintiff's Memorandum of Law in support of his motion for default judgment, filed June 30, 2021, ECF No. 16.

judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

A party defaults when it "has failed to plead or otherwise defend" the case. Fed. R. Civ. P. 55(a). The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011). Indeed, a defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial," Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, or by failing to comply with discovery orders or

5

failing to appear for trial. Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-19 (3d Cir. 1992)). However, the "typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 129 (alterations and quotations omitted).

### A. Liability under the FLSA

To establish a claim under the FLSA, plaintiff must prove the following: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

6

29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

In the Complaint, plaintiff alleges that defendant is a domestic limited liability company that has a gross volume business of over $500,000, subjecting it to the requirements of the FLSA.  (Compl. ¶¶ 6-7, 23-26).  Plaintiff states that defendant "is an enterprise[] engaged in commerce," in that it "handle[d] goods or material that have moved or been produced in interstate commerce."  (Mem. at 3 (citing Archie v. Grand Central Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998), and noting that courts have found a connection to interstate commerce merely through use of "janitorial/cleaning supplies"); see Compl. ¶¶ 7, 24).  Plaintiff further alleges that he worked for defendant as a food delivery person from June 2018 to August 24, 2020.  (Compl. ¶ 12).  Accepting plaintiff's allegations as true for purposes of this default, the Court finds that plaintiff has sufficiently alleged that defendant qualifies as an "employer" under the FLSA, and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as an "employee" under the FLSA.[8]

Moreover, plaintiff alleges in the Complaint that during the period of his employment, he regularly worked more than 40 hours per week, was not paid overtime compensation, and was not paid a minimum wage.  (Id. ¶¶ 27-29).  He claims that during the time he worked for defendant, he worked six days per week, from 2 p.m. to 11 p.m. for three of those days and from 2 p.m. to 12 a.m. the remaining three days for a total of 57 hours.  (Id. ¶ 13).  Plaintiff alleges he

---

[8] See 29 U.S.C. § 213(a) (setting forth the exemptions).

was paid only $400 per week from June 2018 until January 2020, and only $450 per week from January 2020 until August 24, 2020. (Id. ¶ 14). Plaintiff therefore argues that his pay was insufficient to meet both the minimum wage and overtime requirements of the FLSA. (Id. ¶¶ 27-28).

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state claims under the FLSA for failure to pay minimum wages and failure to pay overtime wages.[9]

## B. Liability under the NYLL

Plaintiff also alleges that defendant violated the NYLL. Like the FLSA, the NYLL establishes certain minimum wage rates and provides for overtime pay. See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146-1.4; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread-of-hours" wages). 12 N.Y.C.R.R. § 146-1.6(a). Lastly, an employer is liable under the NYLL if it fails to provide proper wage notices and statements pursuant to the Wage Theft Prevention Act, N.Y. Lab. Law §§ 195(1)(a) and 195(3). Since plaintiff worked for the restaurant that defendant operated (Compl. ¶¶ 8, 12), the

---

[9] The Court notes that while plaintiff has adequately alleged a claim for unpaid minimum wages under the FLSA during the period from June 2018 to January 2020 when he was effectively paid $7.00 per hour, his allegations for the period January 2020 to August 24, 2020 show that he was paid approximately $7.90 per hour, which is greater than the $7.25 minimum wage rate that was in effect under the FLSA for the entire period. However, as set forth below, because minimum wage and overtime rates under the NYLL were significantly higher during both periods, and a plaintiff cannot recover damages under both the FLSA and NYLL, the Court has only considered plaintiff's claims under the NYLL in calculating plaintiff's damages. See Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) (holding that plaintiff may only recover once for the same injury).

hospitality industry-specific provisions of the NYLL apply to this case. See 12 N.Y.C.R.R. § 146-3.1(a) (defining "hospitality industry" to include "any restaurant").

To recover under the NYLL, plaintiff must prove that he is an "employee," and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009). Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law. See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"). Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ." N.Y. Lab. Law § 651(5).

In this case, plaintiff alleges that he was employed by defendant within the meaning of Section 651 of the NYLL. (Compl. ¶ 35). Plaintiff states that defendant willfully failed to pay minimum wages and overtime as required by the NYLL. (Compl. ¶¶ 36, 38). Plaintiff also alleges that he was not paid spread-of-hours compensation nor was he provided proper wage statements or notices as required by the NYLL. (Id. ¶¶ 39-40). Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the NYLL.

II. Damages

Plaintiff seeks backpay, liquidated damages, and statutory damages for the FLSA and NYLL violations.[10] Although plaintiff originally requested attorney's fees (see Compl. ¶¶ 33,

---

[10] Plaintiff also initially requested a "declaratory judgment" that defendant's practices are unlawful, as well as an injunction against defendant from engaging in said practices. (See Compl. at 8). However, plaintiff now only seeks monetary damages. (See Seelig Aff. ¶ 16; id., Ex. E (setting forth proposed Order)). Additionally, plaintiff's Complaint originally sought prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004. (See Compl. at 8). Although courts have granted requests for interest in wage and hour cases like this, see Blaszczyk v. M3 Dev. Grp. Inc., No. 18 CV 5641, 2020 WL

9

41), he does not appear to be asking for it this motion.

### A. Legal Standard

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages

---

9812919, at *5 (E.D.N.Y. Nov. 3, 2020); Sarmiento Perez v. Comhar Grp. LLC, No. 19 CV 0964, 2020 WL 1364908, at *7 (E.D.N.Y. Mar. 6, 2020), report and recommendation adopted, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); Easterly v. Tri-Star Transp. Corp., No. 11 CV 6365, 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015), plaintiff failed to request prejudgment interest in his motion papers. Therefore, this Court has only considered plaintiff's request for relief as set forth in his current motion.

specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, because the plaintiff has provided a reasonably detailed affidavit in support of his request for damages, the Court sees no reason not to proceed.

### B. Backpay – Minimum Wage, Overtime, and Spread of Hours

Plaintiff seeks reimbursement for the minimum wages and overtime that he should have received pursuant to both the FLSA and NYLL. (Compl. ¶¶ 14, 27, 37). Although plaintiff has alleged that he was not paid the proper minimum wage or overtime rate under both the FLSA and the NYLL, plaintiff is "not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (internal quotation marks and citations omitted), report and recommendation adopted as modified, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014); see also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *3 (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").

Plaintiff "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) (citation omitted)). Since his recovery under the NYLL would be greater because the minimum wage rate in New York was higher than the federal minimum wage rate, the Court has calculated damages owed under the NYLL. Compare N.Y. Lab. Law § 652 (setting minimum wage rates of $13 and

11

$15, respectively, during plaintiff's years of work) with 29 U.S.C. § 206(a) (setting minimum wage rate at $7.25). In addition, plaintiff's regular rate of pay is higher under the NYLL than it would be under the FLSA. "Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked . . . .'" Pineda v. Frisolino, Inc., No. 15 CV 3774, 2017 WL 3835882, at *10 (S.D.N.Y. Aug. 29, 2017) (quoting 29 C.F.R. § 788.109). Under the hospitality-specific provisions of the NYLL, the regular rate is calculated "by dividing the employee's total weekly earnings, . . . by the *lesser* of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5 (emphasis added). Here, the NYLL also allows for the greater recovery because plaintiff's regular rate of pay will be determined by dividing his weekly wage by 40 hours, rather than by the 57 hours he actually worked each week. Yu Wei Cao v. Miyama, Inc., No. 15 CV 266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019).

Plaintiff's Complaint alleges that he worked 57 hours per week for a "fixed salary" of $400.00 per week from June 2018 to January 2020, and $450 per week from January 2020 to August 24, 2020. (Mem. at 6; Compl. ¶¶ 13-14; Seelig Aff. ¶¶ 9-10). Plaintiff contends that under the NYLL, his hourly rate should be calculated by dividing those fixed rates of $400 and $450 by 40 hours per week, which results in an hourly rate of $10 per hour from June 2018 to January 2020 and an hourly rate of $11.25 per hour from January 2020 to August 24, 2020. (See Dam. Calc.). During the period January 1, 2018 through December 31, 2018, the minimum wage rate for employees in New York City was $13.00, and from January 1, 2019 on, the minimum wage rate was $15.00 an hour. N.Y. Lab. Law § 652. Based on this information, plaintiff contends that he was not paid the minimum wage pursuant to the NYLL for the first 40

12

hours he worked each week, setting aside any overtime pay that he was owed for the additional 17 hours per week he allegedly worked.  (See Dam. Calc.).

Thus, for the period from June 2018 to January 2020, had plaintiff been paid at the proper minimum wage rate under the NYLL for the first 40 hours he worked each week, he would have received a minimum wage of $520 per week from June 2018 to December 2018, and $600 per week from January 2019 to December 2019, instead of $400 per week, representing an underpayment of $120 and $200, respectively.  For the period January 2020 to August 24, 2020, plaintiff should have been paid $600 per week instead of the $450 per week that he did receive.  Plaintiff argues that he is owed unpaid minimum wages totaling $19,220.[11]  (See id.).

As far as his claim for overtime pay, plaintiff was entitled to receive time and a half for every hour that he worked over 40 hours in a week.  See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146-1.4.  Plaintiff's overtime rate, calculated using the applicable minimum wage rates under the NYLL, would be $19.50 per hour from June 2018 to December 2018 and $22.50 per hour from January 2019 to August 24, 2020.  (Id.)  Plaintiff alleges that he worked 57 hours per week, which amounts to 17 hours of overtime per week.  (Id.; Compl. ¶ 13).  Thus, for the period from June 2018 to December 2018, plaintiff should have received overtime pay of $331.50 per week.  For the period January 2019 to August 24, 2020, plaintiff should have received overtime pay of $382.50 per week.  Having reviewed plaintiff's calculations and conducted the Court's own calculations,[12] the Court finds that plaintiff should have been paid a total of $43,171.50 in

---

[11] The Court's calculations are as follows:
June 2018 – December 2018: ($13 – $10) x 40 hours = $120 per week x 31 weeks = $3,720.00.
January 2019 – December 2019: ($15 – $10) x 40 hours = $200 per week x 52 weeks = $10,400.00.
January 2020 – August 24, 2020: ($15 - $11.25) x 40 hours = $150 per week x 34 weeks = $5,100.00.
Adding the total amount for each period results in $19,220.
[12] The Court's calculations are as follows:
June 2018 – December 2018: ($19.50 – $0) x 17 hours = $331.50 per week x 31 weeks = $10,276.50.
January 2019 – August 24, 2020: ($22.50 - $0) x 17 hours = $382.50 per week x 86 weeks = $32,895.00.

13

overtime compensation. (Dam. Calc.).

In addition, under the NYLL, an employee is entitled to receive one additional hour of pay calculated at the applicable minimum wage rate per day for the days during which the employee worked more than 10 hours. 12 N.Y.C.R.R. § 146-1.6. In this case, plaintiff alleges that he worked in excess of 10 hours on 3 days each week, during the entire time he worked for defendant. (Compl. ¶ 13). He therefore argues that he should have received an additional 3 hours of pay per week, calculated at $13 an hour for the period from June 2018 to December 2018, and $15 an hour from January 2019 to August 24, 2020 for a total of $15,237. (Dam. Calc.). Given that there were 31 weeks between June 2018 and December 2018, and plaintiff claims to have worked more than 10 hours a day, 3 days per week, he should have received an extra $13.00 a day for each day that he worked more than 10 hours for a total of $1,209 for this period. From January 2019 to August 24, 2020, there were 86 weeks. Using the NYLL minimum wage rate of $15.00 an hour that was in effect at the time, and considering plaintiff's claim for spread-of-hours pay 3 days per week, he should have received $3,870. Thus, in total, this Court's calculations result in a total spread-of-hour damages of $5,079.[13] Although plaintiff used the same method of calculation as this Court, it appears that through some sort of mathematical error, plaintiff reached a much higher number. (See Dam. Calc.). The Court thus respectfully recommends that plaintiff be awarded $5,079; the amount produced by this Court's calculations for plaintiff's spread-of-hours damages.

Having reviewed plaintiff's damages calculations, the Court respectfully recommends

---

Adding the total amount for each period results in $43,171.50.

[13] The Court's calculations are as follows:
June 2018 – December 2018: $13 x 3 days per week x 31 weeks = $1,209.
January 2019 – August 24, 2019: $15 x 3 days per week x 86 weeks = $3,870.
Adding the total amount for each period results in $5,079.

14

that plaintiff be awarded $67,470.50, representing $19,220 in unpaid minimum wages, $43,171.50 in unpaid overtime wages, and $5,079 in unpaid spread-of-hours wages.

### C. Liquidated Damages

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to state law. (See Compl. ¶ 41[14]); N.Y. Lab. Law § 663(1). Plaintiff claims he is entitled to liquidated damages under the NYLL for the entire period, amounting to a total of $67,470.50[15] in liquidated damages on those unpaid wages and overtime. (See Dam. Calc. at 2; Seelig Aff. ¶ 16).

The NYLL provides for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments. N.Y. Lab. Law §§ 198(1-a), 663(1). Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful. Id. § 663(1). However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)). Under the NYLL, therefore, the employer bears the burden of proving good faith and reasonableness. The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman

---

[14] Although plaintiff initially stated that he was entitled to liquidated damages under both the FLSA and the NYLL (see Compl. ¶¶ 31, 41), plaintiff is inconsistent in his request for liquidated damages. (Compare Seelig Aff. ¶ 16 (requesting damages only under the NYLL) with Mem. at 9 (requesting liquidated damages under both)). In any event, plaintiff is not entitled to an award of liquidated damages under both statutes. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) (holding "we therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct"). The Court will therefore only look to the NYLL liquidated damages request.

[15] Although plaintiff requests a higher amount of liquidated damages (see Dam. Calc. at 2), because the Court found an error in plaintiff's calculation of his spread-of-hours damages, the Court has calculated plaintiff's liquidated damages using the spread-of-hours pay determined by this Court.

15

v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

Defendant has defaulted and therefore has not met its statutory burden of demonstrating that it acted in good faith in failing to pay overtime to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under the NYLL. Accordingly, the Court recommends awarding plaintiff an additional $67,470.50 in liquidated damages, which is equal to the amounts due in unpaid minimum, overtime, and spread-of-hours wages.

### D. Statutory Damages for Wage Notice Violations

Plaintiff also alleges that defendant never provided him with a wage notice at the time of hiring, nor did defendant provide updated notices when necessary, or wage statements, as required by NYLL §§ 195(1) and 195(3). (Seelig Aff. ¶ 15; Compl. ¶¶ 40, 49).

Section 195(1) requires that an employer provide a notice to the employee, at the time of hiring, that sets forth the rate of pay, allowances, and other specified information. N.Y. Lab. Law § 195(1). Employers are also required to provide such a notice whenever any of the information required by the notice, such as the rate of pay, changes. Id. Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. N.Y. Lab. Law § 195(3).

The statute provides that an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00. See N.Y. Lab. Law § 198(1-d). Similarly, an employee can recover $50.00 for each workday that the employer was in violation of Section 195(1), up to a statutory maximum of $5,000. See id. § 198(1-b). Here, plaintiff alleges that he did not receive the required wage notice at the time of

16

hire or at any point in time, nor was he provided with wage statements when he received his wage payments. (Compl. ¶¶ 39, 40). Since plaintiff began working in June 2018 and worked for more than the minimum number days required, he is entitled to receive an additional $5,000 for each of these statutory violations, or $10,000 in total, as a penalty for defendant's violation of these sections.

### E. Attorney's Fees

In his Complaint, plaintiff requested attorney's fees under both the FLSA and NYLL. (Compl. ¶¶ 33, 41). Both the FLSA and NYLL allow for an award of attorney's fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 663(1). Indeed, under the FLSA, the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action. Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" (quoting 29 U.S.C. § 216(b))); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013). Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. Law § 663(1). Section 663 provides that successful employees are entitled to:

> "[R]ecover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . ."

Id. Plaintiff is a prevailing party under the FLSA and NYLL if he "'succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'" Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990)

17

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendant has defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs. However, plaintiff does not make a request for fees in his motion for default judgment, stating only that "Legal fees and expenses [are] to be determined." (Dam. Calc. at 2). The Court respectfully recommends that if plaintiff wishes to pursue fees and costs, plaintiff's counsel be given 30 days to submit her motion, along with the necessary supporting documentation required by the Second Circuit in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

## CONCLUSION

Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be granted. The Court further respectfully recommends awarding plaintiff $144,941.00 in damages, which includes $67,470.50 in compensatory damages, $67,470.50 in liquidated damages, and $10,000.00 for statutory violations. The Court also recommends that plaintiff be provided an opportunity to submit attorney's fee calculations and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: February 2, 2022
Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
Chief United States Magistrate Judge
Eastern District of New York